UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

UNITED STATES OF AMERICA,


                    v.                          DECISION AND ORDER
                                                    09-CR–331-A

CHARLES WATKINS,
a/k/a PINGY, et al.,

                         Defendant.

═══════════════════════════════════


        The defendant, Charles Watkins, is charged with participating in criminal

activities of a gang in Buffalo, New York, referred to as the 10th Street Gang.

Defendant Watkins is charged in three counts of a Fourth Superseding Indictment

with racketeering conspiracy in violation of 18 U.S.C. §1962(d) (Count 1), drug-

trafficking conspiracy in violation of 21 U.S.C. §846 (Count 62), and possession

of a firearm during commission of a drug-trafficking crime in violation of 18 U.S.C.

§924(c)  (Count 63).  Dkt. No. 408.  Jury selection and trial will begin March 25,

2014.

        Defendant Watkins has moved to suppress oral statements made at

various times and to suppress items seized from his residence during a

warrantless search on May 5, 2011.  Dkt. Nos. 509, 1201.  The Court held a

suppression hearing January 28, 2014 and February 3, 2014, and heard oral

argument at the close of the hearing.[1]  For the following reasons, the Court

denies defendant's motions to suppress.

   August 13, 2004 Oral Statements.  The first statements defendant Watkins

moved to suppress are oral statements he allegedly made without having been

given *Miranda* warnings during a traffic stop by City of Buffalo Police on August

13, 2004.  Buffalo Police Officer Jason Mayhook, who is now a Detective,

observed a car traveling on Plymouth Avenue near Hudson Street in Buffalo at

about 5:40 a.m. on August 13, 2004, and suspected the driver's vision was

illegally obstructed by items hanging from a rear-view mirror.  Officer Mayhook

attempted to stop the car, a Dodge Neon, using his police car's flashing overhead

lights.

   When the Neon did not immediately pull over, and then failed to stop at a

stop sign at the intersection of Plymouth Avenue and Pennsylvania Street in

Buffalo, Officer Mayhook activated the siren on his police car.  The Neon still did

not stop until about two blocks later, near 316 Jersey Street, just off Plymouth

Avenue.

   Defendant Watkins was the driver of the Neon.  There were

two other persons in the car.  Without administering *Miranda* warnings, Officer

Mayhook asked defendant Watkins why he had not pulled over sooner in

---

[1]  The Court found adequate cause for defendant Watkins' late efforts to obtain
an evidentiary hearing on his timely-filed suppression motions for reasons not relevant
to disposition of the motions.

response to the flashing lights and siren.  Defendant said there was no place to pull over.  Officer Mayhook walked with defendant the short distance toward Plymouth Avenue, looked back down Plymouth Avenue, a one-way street, and said,  "There were plenty of places to stop."  Defendant responded by saying  "My bad, yo,"  or words to similar effect.[2]

Defendant Watkins argues in support of his motion to suppress that, when he was asked why he did not stop sooner and to acknowledge there were plenty of places to have stopped the car, he was in police custody and had not been given *Miranda* warnings.  In general, statements that are in response to police interrogation by a person who is in police custody are excluded at trial unless the person was first advised of the rights against self-incrimination and to legal counsel as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and the person knowingly and voluntarily waived those rights.

In determining whether a person was actually in police custody for *Miranda* purposes,  "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983); *see also Howes v. Fields*, 132 S. Ct. 1181, 1189-90 (2012); *United States v. FNU LNU*, 653 F.3d 144, 148, 153

---

[2]  While attempting to pull over the Dodge Neon, Officer Mayhook saw a small plastic bag thrown from the car on Plymouth Avenue.  The bag was later found to contain about three grams of cocaine.  Defendant's alleged statements apparently relate to a conspiracy or conspiracies alleged in the Fourth Superseding Indictment.

(2d Cir. 2011).  The test for custody in this context is an objective one, based upon the perspective of a reasonable person in the suspect's position.  *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

Persons detained during a routine traffic stop by police, although not free to leave, are subject to a significantly less coercive detention than a formal arrest, so it is firmly settled  "that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*."  *Berkemer v. McCarty*, 468 U.S. 440-42; *United States v. Wong Ching Hing*, 867 F.2d 754, 756 (2d Cir. 1989).  That a routine traffic stop is not "custody" for *Miranda* purposes does not necessarily mean that a traffic stop never involves "custody" with the degree of restraint for which *Miranda* warnings are required before police questioning, however.  *See e.g., United States v. Newton*, 181 F.Supp.2d 157, 170 (E.D.N.Y. 2002).  "Custody" for *Miranda* purposes occurs when coercive restraints amount to a formal arrest.

The Court finds the early-morning traffic stop leading to defendant Watkins' statements on August 13, 2004 was brief, public and routine, and a reasonable person in the circumstances would not feel "completely at the mercy of the police" as might be expected if it had been a formal arrest and interrogation.  *See United States v. Newton*, 369 F.3d 659, 675 (2d Cir. 2004) (citations omitted). For example, the two-step display of authority by Officer Mayhook, with overhead flashing lights activated substantially before the police car's siren, was slightly

4

less coercive than even a routine traffic stop.

Nothing suggests Officer Mayhook used or threatened the use of force at any time, such as by displaying a weapon or otherwise intimidating or coercing defendant, before defendant Watkins spoke.  Even though defendant accompanied Officer Mayhook from 316 Jersey Street to look back down Plymouth Avenue, the Court finds in the totality of the circumstances defendant was not in custody for *Miranda* purposes when he was asked why he did not stop sooner and when he was asked to acknowledge that there were plenty of places he could have pulled over on Plymouth Avenue.  Defendant was therefore not entitled to *Miranda* warnings at the time he made the alleged admission that he could have pulled over.

Similarly, nothing Officer Mayhook did was close to overbearing defendant Watkins' will to resist questioning.  The totality of the circumstances also show defendant's statements were made voluntarily.  Defendant's motion to suppress his alleged August 13, 2004 statements is denied.

May 15, 2009 Oral Statements.  Defendant Watkins also moved to suppress statements he allegedly made May 15, 2009, after having been arrested and handcuffed by Buffalo Police Lieutenant Steven Malkowski near 180 West Street, Buffalo.  Defendant had run from 257 Whitney Place, while being chased by other police officers.

Defendant Watkins acknowledged during his testimony on cross

5

examination during the suppression hearing on February 3, 2014, that he was given *Miranda* warnings by Lieutenant Malkowski shortly after he was arrested near 180 West Street on May 15, 2009.  Defendant also acknowledged that, based upon his personal experience in the criminal justice system, and his general knowledge, he understood *Miranda* warnings.

Defendant Watkins attended high school into the 12th grade and has a General Equivalency Diploma.  He seems intelligent and generally capable of standing up for himself.  He denies drug addictions.

Having observed defendant Watkins' testimony and cross examination, the Court finds he understood his rights under *Miranda* when he was given the warnings by Lieutenant Malkowski on May 15, 2009, he understood what he was giving up when he chose to talk, and that his post-warning statements on May 15, 2009 were not in violation of his *Miranda* rights.  Defendant's motion to suppress those statements is therefore denied.

Under the totality of the circumstances, the Court also finds defendant Watkins' May 15, 2009 statements were voluntarily made.  There is no evidence defendant's will to invoke his rights to remain silent and to legal counsel were overborne by police conduct leading up to his arrest and questioning, including police responses to his attempt to run from officers who sought to detain and question him at 257 Whitney Place.

Before Lieutenant Malkowski, who also testified during the suppression

hearing, apprehended defendant Watkins, defendant had been running from officers through a some yards and was breathing hard.  Defendant was frisked, handcuffed, and was seated in the back of a police car at the time Lieutenant Malkowski delivered the *Miranda* warnings to him.  Defendant specifically acknowledged to Lieutenant Malkowski that he understood the warnings. Defendant responded to Lieutenant Malkowski when the Lieutenant asked if he was willing to talk by saying that it would depend on what the Lieutenant asked. Defendant's conditional response shows his will to resist police questioning was intact.

During the questioning that followed, police did not coerce or threaten defendant.  Defendant Watkins allegedly admitted he ran from police officers because he was on parole, admitted a certain phone number was his, and admitted he was paying rent for 257 Whitney Place under the name  "Peter."  The Court finds the alleged statements of defendant on May 15, 2009 were voluntary.

May 5, 2011 Warrantless Search.  Defendant Watkins moved to suppress items seized without a warrant from his apartment at 1920 Niagara Street, Apt. 4, when he was arrested pursuant to a warrant on May 5, 2011.  Defendant was taken into custody by members of an armed arrest team just inside the doorway of his apartment at about 6:15 a.m.  He was wearing only a tank-top shirt and underwear.  He told agents his girlfriend was in the apartment.  The agents

entered the apartment to conduct a security sweep and so they could safely obtain clothing for defendant to get dressed.[3]

Agents handcuffed defendant Watkins and, as other agents secured defendant's apartment, FBI Special Agent Thomas Palmer, who also testified at the suppression hearing, administered *Miranda* warnings to defendant. Defendant indicated he understood his rights.  They were on a stairway landing on a floor below defendant's apartment.

Special Agent Palmer asked defendant Watkins if there were any drugs or weapons in his apartment.  Defendant denied there were drugs or weapons in the apartment.  Special Agent Palmer asked defendant if defendant consented to the apartment being searched.  Special Agent Palmer testified that defendant replied, "You can search, but I am not signing anything."  During defendant's testimony, he denied giving consent to search his apartment on May 5, 2011.

A determination whether consent to search was given, and if so, whether it was given voluntarily, is based upon the totality of the circumstances.  *See United States v. Isiofia*, 370 F.3d 226, 230 (2d Cir. 2004).  Despite conflicting testimony in this case, the Court finds by a preponderance of the evidence that defendant Watkins orally consented to the search of his apartment on May 5, 2011.  FBI

---

[3]  When a person is arrested pursuant to a warrant in their residence and is only partially clothed, arresting agents may have a duty to find clothing for the person, and may conduct a limited search for clothing.  *United States v. Di Stefano*, 555 F.2d 1094, 1101 (2d Cir. 1977).

Special Agent Palmer's testimony about the circumstances when defendant consented to the search was appropriately detailed, coherent, and was corroborated by the suppression hearing testimony of Erie County Probation Officer Howarth Colon, who was also present.

Before defendant Watkins was taken back into his apartment to get fully dressed, FBI Special Agent James Markovich inserted a collapsible baton between cushions of a couch located in the apartment near the front door and swept the baton around to check for weapons or evidence so that defendant could safely be seated on the couch. Some United States currency scattered as Special Agent Markovich swept his baton between the cushions, and the currency was later seized.

It was reasonable for agents to conduct the limited warrantless search of the area where defendant Watkins was to be seated to wait for clothing. *See Chimel v. California*, 395 U.S. 752, 763 (1969). Even though defendant Watkins was handcuffed, Special Agent Markovich's limited warrantless search of the couch was permissible under the Fourth Amendment as a search incident to defendant's arrest for officer safety and preservation of evidence. *United States v. Hernandez*, 941 F2d 133, 137 (2d Cir. 1991) (seizure of gun found during a search incident to arrest between a mattress and box spring within defendant's reach upheld though defendant was in handcuffs.)

In general, for consent to search to be valid, it must be the product of free

choice and more "than mere acquiescence in a show of authority." *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir. 1993). For example, a consent to search may be invalid if it is obtained as a result of an earlier illegal search. *See United States v. Tortorello*, 533 F.2d 809, 815 (2d Cir. 1976).

Defendant Watkins testified that he observed an agent putting United States currency in a bag for seizure when defendant was taken back into his apartment to be dressed and that he had not consented to the search that found the currency. He observed several agents were in the apartment after having completed a security sweep of the apartment.

But the limited search of areas between the cushions of defendant's couch by Special Agent Markovich was a lawful warrantless search incident to defendant's arrest. *Chimel*, *supra*. The limited safety sweep of the apartment after defendant told agents his girlfriend was there, and so the agents could safely obtain clothing for defendant, was a lawful warrantless search. *See e.g.*, *Maryland v. Buie*, 494 U.S. 325, 334 (1990). Accordingly, even if defendant argued he felt forced to consent to the general search of his apartment only because he saw agents moving through his apartment and because he saw currency found in the couch without his consent being seized, his later consent to search the apartment would still be valid. A consent to search is valid if freely given, even if given with a misunderstanding of the right to refuse consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 241-42 (1973). After careful

10

consideration of all the circumstances, the Court finds defendant's consent to search 1920 Niagara Street, Apt. 4, on May 5, 2011, was not the product of police coercion and that his consent to search was voluntary.  Defendant's motion to suppress the items seized from the apartment without a warrant is denied.

May 5, 2011 Oral Statements.  Although FBI Special Agent Palmer gave defendant Watkins *Miranda* warnings within minutes of his arrest on May 5, 2011, the warnings were administered again by Probation Officer Colon about an hour and half later at a local FBI office.  Upon the later warning, defendant signed an FBI form indicating he understood each of his specific rights under *Miranda* against self-incrimination and to legal counsel, and that he was willing to talk. The form was admitted into evidence during the suppression hearing.

An express written waiver of *Miranda* rights of the kind signed by defendant Watkins on May 5, 2011, is not required for a valid waiver of those rights.  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).  A valid waiver does require  "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving the right."  *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995).  This determination also depends upon the totality of the circumstances.  *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

As noted above, defendant Watkins is reasonably intelligent and he testified that he reads and writes the English language.  He plainly has enough

general knowledge and specific experience in the criminal justice system to know better than most persons the nature of the rights he relinquished each time he responded to the law enforcement agents who questioned him.  Among the statements defendant allegedly made during questioning, were admissions of selling cocaine, crack cocaine, and marijuana.  He denied ever selling heroin, but allegedly admitted selling drugs was  "a way of life."

Defendant Watkins also allegedly admitted having had a house on Whitney Place in 2009, and denied knowing someone who was murdered nearby in the summer of 2009.  Defendant identified a person referred to as  "Miguel" as his cousin and co-defendant, Miguel Moscoso, and denied knowing whether Moscoso was in a gang.  He allegedly admitted knowing other co-defendants Matthew Deynes and David Deynes.  He denied having a certain "M.O.B."  tattoo, and indicated there is no 10th Street gang.  He allegedly told agents that he had earned currency seized from his couch, kitchen, and bedroom by selling cars. Because the Court finds by a preponderance of the evidence that these and all the statements defendant made after signing the express written *Miranda* waiver form were voluntarily made after he waived his *Miranda* rights, and that defendant was fully aware of the rights being waived and of the consequences of waiving them, defendant's motion to suppress the statements he allegedly made to FBI agents on May 5, 2011 is denied.

**CONCLUSION**

For the foregoing reasons, defendant Charles Watkins' motions (Dkt. Nos. 509 and 1201) to suppress oral statements he allegedly made to then-Officer Mayhook on August 13, 2004; to suppress oral statements he made to Lieutenant Malkowski on May 15, 2009, to suppress items seized without a search warrant from 1920 Niagara Street, Apt. 4, Buffalo, New York, on May 5, 2011; and, to suppress oral statements made to FBI Special Agents on May 5, 2011, are all denied.

**SO ORDERED.**

*Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

Dated: February 7, 2014